**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE BRONX FREEDOM FUND,
individually and on behalf of
all others similarly situated,

      Plaintiff,

         v.

THE CITY OF NEW YORK;
THE NEW YORK CITY DEPARTMENT OF FINANCE;
LAWRENCE MARKS, CHIEF ADMINSTRATIVE
JUDGE OF THE COURTS OF NEW YORK STATE;
DEBORAH KAPLAN, DEPUTY CHIEF ADMINSTRATIVE
JUDGE OF THE NEW YORK CITY COURTS;
ALVIN YEARWOOD, ADMINSTRATIVE JUDGE,
CRIMINAL MATTERS, TWELFTH JUCICIAL DISTRICT;
JUSTIN BARRY, NEW YORK CITY CRIMINAL COURT
CHIEF CLERK;
WILLIAM KALISH, BRONX COUNTY BOROUGH
CHIEF CLERK; and
JOHN AND JANE DOES 1-10,
ALL IN THEIR OFFICIAL CAPACITIES,

      Defendants.

Case No. 21-CV-_____

**CLASS ACTION**
**COMPLAINT &**
**JURY DEMAND**

      Plaintiff The Bronx Freedom Fund, by and through its undersigned counsel, brings this

Class Action Complaint on behalf of itself and all others similarly situated against Defendants

the City of New York, The New York City Department Of Finance; Lawrence Marks, Chief

Administrative  Judge Of The Courts Of New York State; Deborah Kaplan, Deputy Chief

Administrative  Judge Of The New York City Courts; Alvin Yearwood, Administrative Judge,

Criminal Matters, Twelfth Judicial District; Justin Barry, New York City Criminal Court Chief

Clerk; William Kalish, Bronx County Borough Chief Clerk; and John And Jane Does 1-10,

whose true names are currently unknown to Plaintiff, alleging upon information and belief, except as to facts and matters that relate to Plaintiff, which are alleged upon knowledge, as follows:

## NATURE OF ACTION

1.      This class action seeks maximum equitable and declaratory relief and damages for a scheme through which, pursuant to a uniform and pervasive policy and practice, Defendants unconstitutionally and unlawfully forfeited cash bail from Plaintiff and other members of the Class that Plaintiff seeks to represent, thus generating illegal revenue for the City

2.      Simply put, the defendants engaged in a policy and practice whereby the Clerk's office on its own and without a valid court order or any of the requisite judicial findings of fact, appropriated cash bails posted by the plaintiff and others similarly situated.  They did this by filling out forms—unsigned by judges—which rendered the cash bails posted by plaintiff and others to be forfeited and thus remitted to the City.

## JURISDICTION & VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this Court has original jurisdiction over all civil actions arising under the laws of the United States, including 42 U.S.C. § 1983.

4.      The Court also has jurisdiction over this action under 28 U.S.C. § 1343(a)(1)-(4), which confers original subject matter jurisdiction in this Court over actions involving the alleged deprivation of civil rights.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same common nucleus of operative facts as Plaintiff's federal claims and form part of the same case or controversy.

6.      The Court has jurisdiction over Plaintiff's claim for declaratory judgment and declaratory relief under 28 U.S.C. §§ 2201 and 2202 as implemented by Rule 57 of the Federal Rules of Civil Procedure.

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391(a) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and Plaintiff Bronx Freedom Fund was located in this District and currently has dozens of bails still outstanding.

<u>**PARTIES**</u>

8.      Plaintiff The Bronx Freedom Fund (the "Fund") is a duly licensed 501(c)(3) not-for-profit bail fund located in the South Bronx.  The first licensed charitable bail organization in New York State, it has provided bail assistance to indigent criminal defendants facing pretrial detention for misdemeanor charges for nearly a decade.  The Bronx Freedom Fund currently has dozens of bails outstanding and tens of thousands of dollars at risk, as well as having been subject to the improper forfeitures described herein.

9.      Defendant the City of New York (the "City") is a duly constituted municipal entity created and authorized under the laws of the State of New York which, through a Mayor and Council and various departments, bureaus and agencies, conducts the business and runs the affairs of City government.

10.      Defendant the New York City Department of Finance (the "Finance Department") is a department of the City charged with collecting billions annually in tax and other revenue. Among the revenue collected by the Finance Department are the proceeds from forfeited cash bails.

11.     Defendant Chief Administrative Judge of New York City Criminal Courts is Lawrence Marks.  Judge Marks is responsible for the day-to-day operation and administration of the court system of New York State.  At all relevant times Lawrence Marks was and is responsible for overseeing the administration of and compliance with the practices and procedures, rules, regulations and laws concerning the setting, posting and forfeiture of bail on a state-wide basis.

12.     Defendant Deputy Chief Administrative Judge of New York City Criminal Courts is Deborah Kaplan.  Judge Kaplan is responsible for the day to day operation and administration of the court system in New York City, at all relevant times was and is responsible for overseeing the administration of and compliance with the practices and procedures, rules, regulations and laws concerning the setting, posting and forfeiture of bail within New York City.

13.     Defendant Administrative Judge of New York City Criminal Court's Twelfth Judicial District is Judge Alvin Yearwood.  Judge Yearwood is responsible for the day to day operation and administration of the court system in the Bronx and, at all relevant times, was and is responsible for overseeing the administration of and compliance with the practices and procedures, rules, regulations and laws concerning the setting, posting and forfeiture of bail within Bronx County.

14.     Defendant Chief Clerk of New York City is Justin Barry, who, as New York City Criminal Court Chief Clerk, at all relevant times, was and is responsible for supervising the operations of the Clerks' Offices across New York City.  As part of this job, Chief Clerk Barry is responsible for creating the forms and practices which codify the administration of and compliance with the practices and procedures, rules, regulations and laws concerning the posting and forfeiture of bail in New York City.  Chief Clerk Barry signed and issued the document

which sets forth the specific practices and procedures to be followed by Clerks of the New York City court system when forfeiting cash bail.

15.     Defendant William Kalish, the Clerk of the Bronx Courthouse, is responsible for implementing policies and practices concerning the forfeiture of bail in Bronx County.

16.     Defendants John and Jane Does 1-10 are individuals presently unknown to Plaintiff who, at all relevant times, were employees, agents, servants and/or officers of the Office of Court Administration, City or of its departments, bureaus or agencies, and were involved or participated in the unlawful acts, practices and conduct alleged in this Complaint.

17.     The John and Jane Doe Defendants include individuals who assisted and/or directly engaged in the violations of the Plaintiff's and the class's rights alleged herein (by signing and issuing Court Orders that were not in fact directed by judges and forfeiting bail based on such unconstitutional directives).

18.     At all times relevant hereto, each of the individual Defendants acted under color of state law in the course or scope of his or her duties and functions as an employee, agent, servant or officer of the City, the Finance Department, and/or the Office of Court Administration or New York City Criminal Courts in engaging in the conduct alleged herein.

19.     At all times here relevant, the individual defendants have acted for and on behalf of the City, the Finance Department, and/or the New York City Criminal Courts, and incidental to the lawful pursuit of their duties as employees, agents, servants or officers of the City, the Finance Department and/or the New York City Criminal Courts.

## FACTUAL ALLEGATIONS

### A.  Bail and Depositors/Sureties

20.     When someone is charged with a crime in New York State, that person is, in most instances, entitled to either bail or release pursuant to Article 530 of New York's Criminal Procedure Law.

21.     Cash bail represents the price of a criminal defendant's freedom.  It exists, theoretically, to help to ensure that a criminal defendant will return to court.

22.     The mission of the Bronx Freedom Fund is to offer bail assistance to those who cannot afford the price of their freedom and otherwise would remain incarcerated in lieu of bail.

23.     During the relevant period, The Bronx Freedom Fund has posted cash bail to help secure the freedom of indigent New Yorkers.

24.     Upon posting bail, The Bronx Freedom Fund, like any other entity that becomes the "surety" or "depositor" of the funds, is issued a bail receipt which entitles the Fund, absent a lawful forfeiture, to the return of the deposited funds at the end of the defendant's criminal case.

25.     Like all cash bail, bail posted by The Bronx Freedom Fund is held by the New York City Department of Finance in a bank account until it is either returned or deemed forfeited.

26.     In the vast majority of cases (approximately 92%), the clients for whom The Bronx Freedom Fund posts bail make their court appearances and as a result the bail money is returned to the Fund.

27.     However, in certain instances, the City seeks to seize the Freedom Fund's bail money by declaring it forfeit.

28.     For the reasons explained in detail below, almost all of these forfeitures fail to comply with The United States Constitution, The Constitution of the State of New York, the laws of New York State, and/or the practices and procedures for the forfeiture of bail set forth in

the relevant operational directive issued by Defendant Chief Clerk Justin Barry in 2013.  It is these instances which give rise to the constitutional violations described in this instant suit.

### B.  Prevalence of Bail Forfeitures

29.     The scope of bail forfeitures is vast.  According to the last available Annual Report of the Criminal Court of New York, revenue from "Bail" in 2017 was $1,552,711 in Bronx County and $7,927,509 citywide.[1]

### C.  Findings Required in Order to Forfeit Bail

30.     The due process guarantees of the Fourteenth Amendment to the U.S. Constitution ensure that a suretor/depositor's cash bail cannot be taken or deemed forfeit without Due Process of Law.

31.     The process that is due in this particular instance is codified in statute, recognized in caselaw, and laid out in detail in the operational procedures of the Office of the Clerk of the Court.

32.     Forfeiture of bail in New York is governed by § 540.10 of New York Criminal Procedure Law (N.Y. C.P.L.).  Subdivision one reads:

540.10 Forfeiture of bail; generally.

1. If, without sufficient excuse, a principal does not appear when required or does not render himself amenable to the orders and processes of the criminal court wherein bail has been posted, the court must enter facts upon its minutes and the bail bond or the cash bail, as the case may, is thereupon forfeited.

33.     In determining when bail is forfeited, the New York Court of Appeals has held that a criminal defendant's mere failure to appear when required does <u>not</u> forfeit the bail.

---

[1] See page 56 of Annual report of the NYC Criminal Court.)

34.     In *People v. Nicholas*, 97 N.Y.2d 24 (2001), the Court of Appeals considered and rejected an argument made by the State of New York that a defendant's failure to appear would, "by operation of law," trigger a forfeiture.  The Court held instead that a forfeiture of bail requires an order that should be certified finding that the defendant failed to appear without sufficient excuse.  *Id.* at 24; *see also People v. Empire Bonding & Ins. Co.*, 196 A.D.3d 21, 24–25 (1st Dept. 2021) ("The bail bond is deemed forfeited when the defendant's nonappearance is entered on the minutes of the court coupled with the court's declaration that the bond is 'forfeited.'").

35.     As the Court explained in *Nicholas*:

> Although in many cases a court is in a position to determine at the first non-appearance that there is no sufficient excuse for a defendant's absence and immediately direct bail bond forfeiture, in some instances it may be necessary to conduct an inquiry to determine whether defendant has proffered an excuse for the absence, whether that excuse is authentic and, if so, whether it is legally sufficient. Once that investigation is completed and a court has reached a forfeiture determination, a formal order should be prepared and signed without delay.

97 N.Y.2d at 30.

36.     In *Nicholas*, when the defendant did not appear for trial, the trial court issued a bench warrant but declined to order the bond forfeited.  *Id.* at 26.  It was not until the trial court made a finding that defendant remained unavailable, that his absence was unexcused, and indicated that it would sign a forfeiture order, that the Court of Appeals found that a forfeiture determination had been made.  *Id.* at 27.

37.     Multiple cases beyond *Nicholas* in New York's appellate courts affirm that a bench warrant is not synonymous with an order of forfeiture.  In *People v. Miller*, 34 A.D.3d 1238 (4th Dept. 2006), the defendant failed to appear for a hearing date and the trial court issued

a bench warrant and revoked bail, but did not make a finding that his absence was unexcused or that bail had been forfeited.  The Fourth Department found, citing *Nicholas*, that the trial court did not make a finding that the defendant's absence was unexcused or direct forfeiture of the bail and, therefore, the bond was not deemed forfeited on that date.  *Id.* at 1239.

38.     In *Int'l Fid. Ins. Co. v. People*, 240 A.D.2d 494, 495 (1st Dept. 1997), after the defendant failed to appear for sentencing, the trial court issued a bench warrant but stayed the forfeiture of the bail for a date a week later.  When the defendant did not appear again, the trial court ordered the bail forfeited.  *Id.* at 495.  The Appellate Division found that the bail was only deemed forfeited *when the trial court explicitly ordered the bond forfeited, not when the bench warrant was ordered*.  *Id.* (emphasis added).

39.     This basic understanding of the mechanics of forfeiture is echoed by the New York City Department of Finance which explains on its website that "**only a judge can issue or reverse a forfeit order.**"[2]

40.     Unfortunately, in the Bronx (and, on information and belief, throughout the City of New York), the clear dictates of the law as set forth in the statute, interpreted by the courts, and directed by the relevant internal memoranda – specifically Operational Directive 2013-11 Issued on December 28, 2013, by Defendant Justin Barry, Chief Clerk – and required by the Due Process Clause of the United States Constitution, are being systematically and intentionally ignored.  This suit seeks to remedy this situation.

41.     In case after case, in the Bronx in particular, suretors are having their property deemed forfeit without any judicial order.  Indeed, it is the explicit position and practice of the

---

[2] It can be found here:  https://www1.nyc.gov/site/finance/sheriff-courts/courts-forfeit-cash-bail.page.

clerks of the Bronx Court to ignore the constitutional and statutory requirements explained above, arrogating to themselves the ability to declare the property of suretors forfeit.

42.     Indeed, the Bronx County Clerk's Office has admitted in writing that it is standard practice for Clerks of the Court to forfeit bail with no written court order of forfeiture, no notation on the buck sheet (the official written record of each court appearance in a New York City criminal case) and no mention of forfeiture in the court minutes.   Instead, the Clerk's Office, in direct contravention of the statutes, the case law, and the established written policy outlined in Chief Clerk Barry's Operational Directive, has arrogated to itself the power to deem certain bails forfeit and sign notices to that effect, despite there being no judicial order.

43.     This is not some minor omission.  Judges are empowered to determine whether a warrant should issue and/or whether bail should stand forfeit.  It is entirely a matter of judicial discretion and as a consequence, even judges who sit on the same court in the same jurisdiction may have  different practices and predilections when it comes to the issuance or staying of warrants and/or the forfeiture of cash bail or bond.  The systemic, borough-wide usurpation of this power is a gross violation of due process and judicial independence, and runs entirely afoul of the statute, and case law, but most importantly, the Constitutions of the United States and the State of New York.

44.     At its most basic, the constitutional guarantee of due process requires that hard earned property does not stand forfeit solely on the whims of an administrator, but instead can only be forfeited as a result of a judicial determination grounded in a fair hearing.[3]

---

[3] Issuing a valid Bail Forfeiture Order is not complicated. It is signed by a judge, styled as an actual Order, and contains actual factual findings, as required under the statute. Indeed, we are aware of instances in which judges in boroughs other than the Bronx have indeed determined that the bail should be forfeit and have made factual findings and issued a proper signed judicial order to that effect.

**D. The Practices of the Bronx Criminal Court Clerk's Office Violate the Constitution of the United States, New York State Law, and the Operational Directives Promulgated by Justin Barry, The Chief Clerk.**

45.     The ordering of a bench warrant is neither equivalent to nor a substitute for an Order of Forfeiture.

46.     An operational directive issued in 2013 by Justin A. Barry, Chief Clerk of the New York State Unified Court System, and attached hereto as Exhibit A, laid out the appropriate steps for clerks to take in processing bail and bond.

47.     The document outlines the procedure to be followed in the case of forfeiture:

> Should the defendant fail to comply with his/her bail conditions *and the Court orders forfeiture*, the clerk will complete a CRC 131A-Forfeiture form. The clerk will transmit CRC 131A to the NYC Department of Finance on those cases in which the money was posted for cash bail or a partial security.

Operational Directive at p. 4.

48.     The actions of the Bronx Criminal Court clerks violate this Operational Directive. Though the Bronx Criminal Court clerks have been properly filing CRC 131A forms, they have not complied with the mandate of the Operational Directive that a court must order forfeiture.

49.     It is the explicit policy of the Bronx Clerk's Office not to follow the constitutionally, statutorily, and organizationally mandated processes which constitute the process that is due to a depositor/suretor before the state seizes its money.  On information and belief, it is also common practice to forfeit bail in the absence of judicial orders.

50.     As a result of this practice, The Bronx Freedom Fund and all other depositors / suretors who have had their bail forfeited without a judicial order, have been denied due process of law, in violation of the Fourteenth Amendment to the U.S. Constitution and the applicable statutes, case law and procedures.

### E.  The Practices of Bronx Criminal Court's Clerk's Office

51.     The Bronx Criminal Court Clerk's Office has engaged, and continues to engage, in a practice of forfeiting cash bail upon the issuance of a bench warrant, despite the absence of a forfeiture order from the court.

52.     Forfeiting bail without a court order constitutes the policy and practice of the Bronx Clerk's Office, and is something that Office has openly admitted to in writing.

53.     In an e-mail to The Bronx Freedom Fund dated Sept. 3, 2020, the Clerk's Office wrote: "[w]hen a defendant warrants at any point between arraignment and sentencing, the bail is forfeited, regardless of when or how the case is disposed of."

54.     In an e-mail dated August 16, 2021, in which he explained the policies concerning bail forfeiture in Bronx County, Borough Chief Clerk William Kalish himself falsely conflates the issuance of a warrant and the forfeiture of bail, re-iterating what one of his clerks (as mentioned above) had also committed to writing when queried about the policy: In Bronx County, the issuance of a bench warrant means that bail is forfeited.  The constitution, case law and the office's operational directives all make clear that in the absence of specific findings and a judicial order that is simply not the case.

### F.  Examples of the Bronx Clerk's Office's Admitted Practice of Unconstitutional Forfeiture

55.     An examination of Bronx Court files and transcripts of cases in which The Bronx Freedom Fund recently received notices of forfeiture bears out this unlawful practice.

**EXAMPLE 1: E.C.**

56.     In the case of E.C., The Bronx Freedom Fund deposited cash bail in the amount of

$750.00 on May 20, 2018.  See Bail Forfeiture Notice (CRC-131A), appended as Exhibit B at 1.

57.      On July 17, 2018, the Clerk of the Court deemed the bail forfeit.  However, no

evidence of a judicial order of forfeiture, either oral or written, is present in the court file or

transcript.

58.     The buck sheet entry for July 17, 2018, which is appended as Exhibit B at 2,

indicates that a warrant was issued, but there is no mention of bail forfeiture.

59.     The minutes for E.C.'s July 17, 2018 court appearance, appended as Exhibit B at

3, demonstrate that the Court issued a warrant after the defendant failed to appear.  The Court did

not issue an order of forfeiture.

60.     Approximately 30 months later, The Bronx Freedom Fund inquired as to why its

bail money had not been returned.  In response, the Fund received CRC-131 notice, dated May

12, 2021, which is appended as Exhibit B at 1.

61.     On July 1, 2021, the Fund received official notice from the New York City

Department of Finance. As a result of the clerk's sole determination, and in the absence of any

judicial order, the cash bail posted by The Bronx Freedom Fund in the amount of $750.00 was

deemed forfeited.

**EXAMPLE 2: M.M.**

62.     In the case of M.M., The Bronx Freedom Fund deposited cash bail in the amount of $500.00 on December 24, 2019.  *See* Bail Forfeiture Notice (CRC-131A), appended as Exhibit C at 1.

63.     On January 14, 2020, the Clerk of the Court deemed that bail forfeit.  However, no evidence of a judicial order of forfeiture, either oral or written, is present in the court file or transcript.

64.     The buck sheet entry for January 14, 2020, which is appended as Exhibit C at 2, indicates that a warrant was issued, but there is no mention of bail forfeiture; indeed the line next to "Bail Condition" is without notation.  *See id.*

65.     The minutes of M.M.'s January 14, 2020 court appearance demonstrate that the Court issued a warrant after the defendant failed to appear.  *See* Exhibit C at 3.  The Court did not make any findings of fact or issue a signed Bail Forfeiture Order.

66.     Months later, after an inquiry as to why the bail money had not been returned, the Fund received CRC-131 notice, dated May 13, 2021.  *See* Exhibit C at 1.  On July 1, 2021, the Freedom Fund received the official notice from the New York City Department of Finance.  As a result of the clerk's sole determination, the cash bail posted by The Bronx Freedom Fund in the amount of $500.00 was deemed forfeit.

**EXAMPLE 3: B.J.**

67.     In the case of B.J., The Bronx Freedom Fund deposited cash bail in the amount of $2,000.00 on January 8, 2019.  See Exhibit D at 1, B.J. Bail Forfeiture Notice (CRC-131A).

68.     On February 19, 2019, the Clerk of the Court deemed that bail forfeit.  *See* Exhibit D at 1.  Yet again, no evidence of a judicial order of forfeiture, either oral or written, is present in the court file or transcript.

69.     The buck sheet entry for February 19, 2019, which is appended as Exhibit D at 2, indicates that a warrant was issued, but no bail forfeiture was ordered.

70.     The minutes of the February 19, 2019 court appearance, appended as Exhibit D at 3, demonstrate that the Court issued a warrant after the defendant failed to appear.  The Court did not issue an order of forfeiture.

71.     Months later, after an inquiry as to why the bail money had not been returned, the Fund received the CRC-131 notice.  *See* Exhibit D at 1.  On July 1, 2021, the Fund received the official notice from the New York City Department of Finance.  As a result of the clerk's sole determination, and absent any judicial order, the cash bail posted by The Bronx Freedom Fund in the amount of $2,000 was deemed forfeit.

**EXAMPLE 4: M.L.**

72.     As shown on the, On November 21, 2019, The Bronx Freedom Fund deposited

cash bail in the amount of $1,000.00 on behalf of M. L.  *See* M.L. Bail Forfeiture Notice (CRC-

131A), attached as Exhibit E at 1.

73.     The Clerk of the Court deemed that bail forfeit on December 3, 2019,  *See* Exhibit

E at 1.  No evidence of a judicial order of forfeiture, either oral or written, is present in the court

file or transcript.

74.     The buck sheet entry for December 3, 2019, indicates that, although a bench

warrant was issued (as shown by the notation "BWO") and the temporary order of protection

was continued, no bail forfeiture was ordered.  *See* Exhibit E at 2.

75.     The minutes of the December 3, 2019 court appearance demonstrate that the

Court issued a warrant after the defendant failed to appear and extended the orders of protection.

*See* Exhibit E at 3-5.  The Court did not issue an order of forfeiture.  *Id.*

76.     On July 22, 2020, the Freedom Fund received the CRC-131 notice.  Exhibit E at

1.  On August 26, 2020, the Freedom Fund received the official notice from the New York City

Department of Finance.  As a result of the clerk's determination, and without a judicial order, the

cash bail posted by The Bronx Freedom Fund in the amount of $1,000 was deemed forfeit.

## CLASS ACTION ALLEGATIONS

77.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following class:

> All suretors whose cash bail was taken by the New York City
> Department of Finance without a proper judicial order of
> forfeiture. (the "Class").

78.     The Class is so numerous that joinder of all members is impracticable.  Although the precise size of the class (and any separate classes or sub-classes that may be appropriate under Rule 23(c)(5)) is presently unknown to Plaintiff, this information is obtainable from Defendants' records.  It is estimated that the Class consists of thousands of depositors and suretors who have had their bail forfeited without a judicial order.

79.     There are questions of law or fact common to the Class, which predominate over any questions affecting only individual Class members.  Among the principal common and predominating questions of law or fact in this case are the following:

      a. whether the City, through the Clerk's Office, the Finance Department, and/or the individual defendants, authorized, implemented, followed and/or permitted policies, practices and procedures which resulted in the issuance of improper bail forfeitures without judicial orders;

      b. whether Defendants deprived Class members of their Constitutional rights through the operation and administration of unlawful bail forfeitures; and

      c. what and when City officials knew about the illegal policies and practices.

80.     Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories. Moreover, there are no defenses available to Defendants that are unique to Plaintiff.

81.     Plaintiff will fairly and adequately protect the interests of the Class and is committed to vigorously pursuing this litigation.  Further, Plaintiff has retained counsel who are highly experienced in handling class actions, particularly large complex class actions involving substantial sums of money and complicated legal and factual issues.  Neither Plaintiff nor its

counsel have any interests which conflict with or are antagonistic to those of the Class or which might cause them to not vigorously pursue this action.

82.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for the parties opposing any Class, as well as a risk of adjudication with respect to individual members, which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impede or impair their ability to protect their interests.

83.     A class action is a superior method for the fair and efficient adjudication of this controversy. The interests of Class members in individually controlling the prosecution of separate claims against Defendants may be small given the amount of the actual damages at issue for each Class member and the burdens on their time and resources, but which in the aggregate are estimated to involve millions of dollars. Management of the action as a class action is likely to present significantly fewer difficulties than those presented by the assertion of thousands of individual claims. The identities of Class members can be obtained from Defendants' records.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983**
**U.S. Constitutional Violations**

84.     Plaintiff repeats and re-alleges each and every allegation set forth above as though fully set forth in complete detail below.

85.     Defendants, acting under color of state law, subjected Plaintiff and other Class members to the foregoing acts and omissions without due process of law and in violation of 42

U.S.C. § 1983, thereby depriving Plaintiff and the Class of their rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following Constitutional rights:

      a.  freedom from unreasonable seizures and unlawful taking of property; and

      b.  freedom from deprivation of property without due process of law.

86.     Plaintiff and other Class members have a property interest in the monies which were unlawfully appropriated from them by Defendants as purported bail forfeitures under the illegal bail forfeiture scheme described above.

87.     As a direct and proximate result of Defendants' deprivation of their federal Constitutional rights, Plaintiff and the Class have suffered damages in the manner and amounts set forth above.

## SECOND CAUSE OF ACTION
### NY Const, Article I, §§ 6 and 7
### Violations of New York State Constitution

88.     Plaintiff repeats and re-alleges each and every allegation set forth above as though fully set forth in complete detail below.

89.     Defendants, acting under color of state law, subjected Plaintiff and other Class members to the foregoing acts and omissions without due process of law and in violation of the New York State Constitution, thereby depriving Plaintiff and the Class of their rights secured by Article I, Sections 6 and 7 of the New York State Constitution, including, without limitation, deprivation of the Constitutional rights of:

      a.  freedom from unreasonable seizures and unlawful taking of property; and

      b.  freedom from deprivation of property without due process of law.

90.    Plaintiff and other Class members have a property interest in the monies which were unlawfully appropriated from as purported bail forfeitures under the illegal bail forfeiture scheme described above.

91.    As a direct and proximate result of Defendants' deprivation of their state Constitutional rights, Plaintiff and the Class have suffered damages in the manner and amounts set forth above.

### THIRD CAUSE OF ACTION
**Declaratory Judgment**

92.    Plaintiff repeats and re-alleges each and every allegation set forth above as though fully set forth in complete detail below.

93.    Plaintiff seeks declaratory relief and judgment as matters alleged herein are subject to disposition as a matter of law pursuant to 28 U.S.C. § 2201 and 2202.


**WHEREFORE,** Plaintiff demands judgment against Defendants on the claims alleged herein as well as the following additional and further relief:

(a) an Order certifying this case as a class action;

(b) compensatory damages to Plaintiff and the Class for their injuries suffered by reason of Defendants' unlawful conduct alleged herein, including but not limited to, the return of all unlawfully forfeited cash bails to the depositors;

(c) a declaration that Defendants' conduct of improperly forfeiting bail violated Plaintiff's and the Class's federal and state Constitutional and civil rights;

(d) an injunction against Defendant's policy of improperly forfeiting bail;

(e) attorneys' fees under 42 U.S.C. § 1988(b) and other provisions of law;

20

(f)  the costs and expenses of this action; and

(g)  such other and further relief as the Court deems just, proper and appropriate.

### **<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury in this action.

Dated: New York, New York
       December 10, 2021

                       Respectfully submitted,

                       **GISKAN SOLOTAROFF & ANDERSON LLP**

               By:   /s/ _____

                       Oren Giskan
                       David Feige
                       Amy Robinson
                       ogiskan@gslawny.com
                       davidfeige@gslawny.com
                       arobinson@gslawny.com
                       646-200-6265
                       90 Broad Street, 2nd Floor
                       New York, New York 10004
                       *Attorneys for Plaintiff*