UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                                     :
THE BRONX FREEDOM FUND, Individually and on :
Behalf of All Others Similarly Situated,                             :
                                                                     :
                              Plaintiff,                             :          21 Civ. 10614 (JPC)
                                                                     :
            -v-                                                      :          OPINION AND ORDER
                                                                     :
                                                                     :
THE CITY OF NEW YORK *et al.*,                                       :
                                                                     :
                              Defendants.                            :
                                                                     :
---------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

    The Bronx Freedom Fund (the "Fund") brings this action alleging that the Bronx County

Criminal Court Clerk's Office regularly forfeits cash bails without following the proper

procedures.  The Fund asserts claims under 42 U.S.C. § 1983, the New York State Constitution,

and 28 U.S.C. §§ 2201 and 2202 for injunctive and declaratory relief, compensatory damages, and

attorneys' fees against the City of New York (the "City"); the New York City Department of

Finance (the "DOF"); the former New York City Criminal Court Chief Clerk, Justin Barry; the

Bronx County Borough Chief Clerk, William Kalish; and various John and Jane Does.  All

Defendants other than the John and Jane Does have moved to dismiss.

    The claims against the DOF, as a non-suable entity, are dismissed.  The Fund's requests

for prospective relief in the form of an injunction and a declaratory judgment are also dismissed

on standing grounds, because the Fund only relies on past injury and has not shown a likelihood

that any injury will reoccur in the future.  Because the Fund seeks only such prospective-looking

relief as to Barry and Kalish, their motions are granted.  And because the Fund has failed to

adequately allege a municipal policy necessary for establishing liability under 42 U.S.C. § 1983, the remaining federal claim against the City is dismissed as well.  Having dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over the state law claims. Defendants' motions therefore are granted in full.  However, each dismissal is without prejudice to the Fund's ability to file a second amended complaint in the event it is able to remedy the pleading deficiencies identified herein.

## I.  Background

### A.    Facts[1]

#### 1.       The Parties

The Fund is a non-profit bail fund in the Bronx that provides "bail assistance to indigent criminal defendants facing pretrial detention for misdemeanor charges."  Am. Compl. ¶ 8.  The Fund's "current operations are primarily focused on ensuring clients out on bail return to court and collecting outstanding bails, but it also remains poised to resume posting bails should the need arise."  *Id.*  The Fund "currently has dozens of bails outstanding and tens of thousands of dollars at risk."  *Id.*

The DOF is a department of the City that collects revenue including "the proceeds from forfeited cash bails."  *Id.* ¶ 10.  Barry, as the New York City Criminal Court Chief Clerk until 2021, "supervis[ed] the operations of the Clerks' Offices" across the City and was responsible for "creating the forms and practices which codify the administration of and compliance with the practices and procedures, rules, regulations and laws concerning the posting and forfeiture of bail

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Amended Complaint.  Dkt. 51 ("Am. Compl."); *see also Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiffs' favor").

in New York City." *Id.* ¶ 11. In this role, "Barry signed and issued Operational Directive 2013-11, the document which sets forth the specific practices and procedures to be followed by Clerks of the New York City court system when forfeiting cash bail." *Id.* Kalish is "the Clerk of the Bronx Courthouse," the person "responsible for implementing policies and practices concerning the forfeiture of bail in Bronx County." *Id.* ¶ 12.

### 2. The City's Bail Practices

Because the Fund's claims concern the allegedly illegal forfeiture of bail in the Bronx, the Court reviews the legal framework for bail in New York under state law and its practical application as alleged in the Amended Complaint. Pursuant to Article 530 of the New York Criminal Procedure Law ("CPL"), "a court, upon application of a defendant charged with or convicted of an offense, is required to issue a securing order for such defendant during the pendency" of a criminal action. CPL § 530.10. If bail is posted, it is held by the DOF "in a bank account until it is either returned or deemed forfeited." Am. Compl. ¶ 22. An entity that posts bail on behalf of a criminal defendant "is issued a bail receipt which entitles the [entity], absent a lawful forfeiture, to the return of the deposited funds at the end of the defendant's criminal case." *Id.* ¶ 21.

Forfeiture of bail is governed by CPL section 540.10 which states:

> If, without sufficient excuse, a principal does not appear when required or does not render himself amenable to the orders and processes of the criminal court wherein bail has been posted, the court must enter such facts upon its minutes and the bail bond or the cash bail, as the case may be, is thereupon forfeited.

CPL § 540.10(1). But "[i]f the principal appears at any time before the final adjournment of the court, and satisfactorily excuses his neglect, the court may direct the forfeiture to be discharged upon such terms as are just." *Id.* § 540.10(2). Otherwise, for forfeited cash bail, the "county treasurer with whom it is deposited shall give written notice of the forfeiture to the person who posted cash bail for the defendant [and] may at any time after the final adjournment of the court or

forty-five days after notice of forfeiture required herein has been given, whichever comes later, apply the money deposited to the use of the county." *Id.* Otherwise, if bail consists of a bail bond, the district attorney, "within one hundred twenty days after the adjournment of the court at which such bond was directed to be forfeited, must proceed against the obligor or obligors who executed such bond" in accordance with procedures specified in section 540.10(3). *Id.* That section provides:

> A bail bond or cash bail, upon being forfeited, together with a certified copy of the order of the court forfeiting the same, must be filed by the district attorney in the office of the clerk of the county wherein such order was issued. Such clerk must docket the same in the book kept by him for docketing of judgments and enter therein a judgment against the obligor or obligors who executed such bail bond for the amount of the penalty of said bond . . . .

*Id.* § 540.10(3).

In determining whether the 120-day period under section 540.10(3) begins to run at a defendant's failure to appear or instead when a court issues a forfeiture order, the New York Court of Appeals has held that "forfeiture does not occur automatically but requires judicial action." *People v. Nichols*, 760 N.E.2d 345, 348 (N.Y. 2001). In other words, forfeiture does not occur "by operation of law, when a defendant first fails to appear at a scheduled court appearance." *Id.* And as the Court of Appeals further explained in *Nichols*:

> A bail bond may not be forfeited unless a defendant fails to appear without sufficient excuse. Although in many cases a court is in a position to determine at the first non-appearance that there is no sufficient excuse for a defendant's absence and immediately direct bail bond forfeiture, in some instances it may be necessary to conduct an inquiry to determine whether defendant has proffered an excuse for the absence, whether that excuse is authentic and, if so, whether it is legally sufficient. Once that investigation is completed and a court has reached a forfeiture determination, a formal order should be prepared and signed without delay.

*Id.* at 349; *see also People v. Empire Bonding & Ins. Co.*, 147 N.Y.S.3d 44, 47 (App. Div. 2021) ("The bail bond is deemed forfeited when the defendant's nonappearance is entered on the minutes

of the court coupled with the court's declaration that the bond is forfeited." (internal quotation marks omitted)).  Thus, while a court must rule on and therefore issue a forfeiture order "within a reasonable time" when a defendant fails to appear, sufficient excuse would prevent issuance of a forfeiture order, and so it is the court's order, not the failure to appear, that makes forfeiture effective.  *Nichols*, 760 N.E.2d at 350.  The Amended Complaint notes that the DOF's website articulates this principle, saying, "[o]nly a judge can issue or reverse a forfeit order."  Am. Compl. ¶ 36 (emphasis omitted).

Following this principle, in 2013, Barry, as Chief Clerk of the New York State Unified Court System, issued an operational directive laying out "the appropriate steps for clerks to take in processing bail and bond."  *Id.* ¶¶ 44-45.  That directive states in part:  "Should the defendant fail to comply with his/her bail conditions and the Court orders forfeiture, the clerk will complete a CRC 131A-Forfeiture form.  The clerk will transmit CRC 131A to the NYC Department of Finance [i]n those cases in which the money was posted for cash bail or a partial security."  *Id.* ¶ 45; *see* Dkt. 1-1 at 4.[2]

### 3.    The Alleged Conduct

The Amended Complaint alleges that Defendants have not followed these bail forfeiture procedures in violation of the New York State Constitution and the U.S. Constitution.  Am. Compl. ¶¶ 85-92.  In particular, as alleged, "in the Bronx (and, on information and belief, throughout the City of New York) . . . suretors are having their property deemed forfeit without any judicial

---

[2] While the Fund has failed to attach the exhibits referenced in the Amended Complaint to that document, it did attach those materials to its original Complaint.  The Court considers those exhibits in this Opinion and Order.  *See Brodeur v. City of New York*, No. 96 Civ. 9421 (RPP), 1998 WL 557599, at *2 (S.D.N.Y. Sept. 2, 1998) (considering documents that "were attached to plaintiff's original complaint" in deciding a motion to dismiss a plaintiff's amended complaint), *aff'd*, 182 F.3d 898 (2d Cir. 1999).

order." *Id.* ¶¶ 37-38.  The Amended Complaint further alleges that "it is the explicit position and practice of the clerks of the Bronx Court to ignore the constitutional and statutory requirements . . . arrogating to themselves the ability to declare the property of suretors forfeit." *Id.* ¶ 38.  "[T]he Bronx County Clerk's Office has admitted in writing that it is standard practice for Clerks of the Court to forfeit bail with no written court order of forfeiture, no notation on the buck sheet (the official written record of each court appearance in a New York City criminal case) and no mention of forfeiture in the court minutes." *Id.* ¶ 39.  Instead, the Fund alleges, "[t]he Bronx Criminal Court Clerk's Office has engaged, and continues to engage, in a practice of forfeiting cash bail upon the issuance of a bench warrant, despite the absence of a forfeiture order from the court." *Id.* ¶ 49.

In a September 3, 2020 email to the Fund, the Bronx Clerk's Office wrote that "when a defendant warrants at any point between arraignment and sentencing, the bail is forfeited, regardless of when or how the case is disposed of." *Id.* ¶ 51 (brackets omitted).  In another email dated August 16, 2021, Kalish "explained the policies concerning bail forfeiture in Bronx County." *Id.* ¶ 52.  While the Fund does not attach a copy of this email to its pleadings or quote from it, the Fund contends that Kalish's email "conflates the issuance of a warrant and the forfeiture of bail, reiterating the policy [that] [i]n Bronx County, the issuance of a bench warrant means that bail is forfeited." *Id.*

Once the Bronx Clerk's Office has deemed a bail forfeited, it sends the money to the DOF. *Id.* ¶ 53.  The DOF then "issues a notice informing the suretor/depositor that the money is deemed forfeited" without giving an "indication that the court did not order forfeiture." *Id.*  The DOF "refuses to return the cash bail, and instead systematically remits the bail to the Comptroller for the City of New York, who then invests the money on behalf of the City." *Id.* ¶ 54.

The Fund provides four examples of what it contends are improper bail forfeitures.  In the first, it posted a bail for an individual identified as "E.C." in the amount of $750.00 on May 20, 2018.  *Id.* ¶ 57.  On July 17, 2018, the Clerk of Court deemed the bail forfeited despite the lack of "evidence of a judicial order of forfeiture, either oral or written . . . in the court file or transcript." *Id.*  ¶ 58.  While the buck sheet reflects that a warrant was issued on July 17, 2018, neither the buck sheet entry nor the minutes for the court appearance that day reflects a court order of forfeiture.  *Id.* ¶¶ 59-60.  After the Fund inquired as to why bail had not been returned, the DOF sent an official notice that the bail was deemed forfeited.  *Id.* ¶¶ 61-62.

Second, in December 2019, the Fund deposited a $500.00 cash bail for an individual identified as "M.M."  *Id.* ¶ 63.  On January 14, 2020, the Clerk of Court deemed the bail forfeited without an indication in the record that a judicial order of forfeiture was issued, although a warrant was issued after the defendant failed to appear in court that day.  *Id.* ¶¶ 64-66.  The Fund received official notice from the DOF in July 2021 that the bail was deemed forfeited.  *Id.* ¶ 67.

Third, in January 2019, the Fund deposited a $2,000.00 bail for a person identified as "B.J." *Id.* ¶ 68.  The Clerk of Court deemed the bail forfeited on February 19, 2019, without evidence of a court order in the case file.  *Id.* ¶¶ 69-71.  Here too, a warrant was issued after the defendant failed to appear at a court appearance.  *Id.* ¶ 71.  The Fund received official notice from the DOF in July 2021 that the bail was deemed forfeited.  *Id.* ¶ 72.

Finally, in November 2019, the Fund deposited a $1,000.00 cash bail on behalf of an "M.L."  *Id.* ¶ 73.  The Clerk of Court deemed the bail forfeited on December 3, 2019 without a court order, although a warrant and an order of protection were issued .  *Id.* ¶¶ 74-76.  The Fund received official notice from the DOF in August 2020 that the bail was deemed forfeited.  *Id.* ¶ 77.

**B.      Procedural History**

The Fund initiated this action on December 10, 2021, purporting to represent itself and all others similarly situated.  Dkt. 1.  The Court referred the case to the Honorable Barbara C. Moses for general pretrial supervision on December 13, 2021.  Dkt. 5.  The City and DOF moved to dismiss on April 11, 2022.  Dkts. 36-38.  Kalish moved to dismiss on April 27, 2022.  Dkts. 41-43.  Barry moved to dismiss on April 27, 2022.  Dkts. 46-48.  In response to these motions, the Fund filed the Amended Complaint on May 23, 2022, bringing three claims.  In the first cause of action, the Fund alleges that the Defendants deprived the Fund "of their rights secured by the Fourth and Fourteenth Amendments" of the U.S. Constitution by conducting unreasonable seizures and unlawful taking of property and by depriving the Fund of its property "without due process of law and in violation of 42 U.S.C. § 1983."  Am. Compl. ¶¶ 85-88.  The second cause of action alleges similar acts by Defendants in violation of the New York State Constitution, Article 1, sections 6 and 7.  *Id.* ¶¶ 89-92.  The third cause of action seeks declaratory relief related to these claims.  *Id.* ¶¶ 93-94.

Given the filing of the Amended Complaint, the Court denied as moot the original motions to dismiss on May 26, 2022.  Dkt. 55.  On June 15, 2022, Kalish and Barry moved to dismiss the Amended Complaint.  Dkts. 56-60.  The City and DOF also moved to dismiss on June 21, 2022.  Dkts. 61-63.  The Fund opposed both motions on July 20, 2022.  Dkts. 64 ("Opposition to Barry/Kalish Motion"), 65 ("Opposition to City Motion").  Kalish filed his reply on August 10, 2022.  Dkt. 68.  Barry, the City, and the DOF filed their replies on August 19, 2022.  Dkts. 69-70.

**II.  Legal Standard**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  Courts take the uncontroverted facts of the complaint as true, but "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration in original) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009) (citation omitted).

### III.  Discussion

#### A.    Whether the DOF May Be Sued

The City and the DOF argue that the DOF is a non-suable entity.  Dkt. 63 ("City Motion") at 9.  They are correct.  *See* N.Y. City Charter ch. 17 § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New

York and not in that of any agency, except where otherwise provided by law."); *Curry v. City of New York*, No. 10 Civ. 5847 (SLT), 2011 WL 128571, at *4 (E.D.N.Y. Jan. 14, 2011) (holding that the DOF is a non-suable entity under this provision); *see also Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (holding that the New York City Police Department is a non-suable entity under this provision).  Therefore, the Court terminates the DOF from this action.

## B.   Standing

The City and Barry[3] argue that the Fund lacks standing to bring its claims against them. City Motion at 11-12; Dkt. 60 ("Barry Motion") at 8-10.   Article III of the United States Constitution limits federal courts "to the resolution of cases and controversies."   *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008)).   "'[P]erhaps the most important of the case-or-controversy doctrines" is the requirement that a plaintiff have standing.   *All. for Envt'l. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) (internal quotation marks omitted).   "Standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'"   *Ross v. Bank of Am. N. Am. (USA)*, 524 F.3d 217, 221 (2d Cir. 2008) (quoting *Denney v. Deutsch Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)).   To meet this requirement, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision."

---

[3] Although Kalish has not moved to dismiss on standing grounds, an identical analysis concludes that standing is lacking with respect to Kalish as to prospective relief, as it does with respect to Barry and the City.  The Court of course cannot ignore this jurisdictional issue.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  Moreover, the Fund has had the opportunity to address the arguments that apply equally to Kalish, given Barry's briefing of the issue.  The same is true of the John and Jane Doe Defendants, against whom the Fund seeks only prospective relief.  Am. Compl. ¶ 15.

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach*, 778 F.3d 390, 394 (2d Cir. 2015)).  A plaintiff seeking to represent a class must personally establish standing for the lawsuit to proceed.  *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

### 1.    Prospective Relief

"Where, as here, plaintiff[] seek[s] injunctive or declaratory relief, [it] 'cannot rely on past injury to satisfy the injury requirement but must show a likelihood that they will be injured in the future.'"  *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (brackets omitted) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  "Such an allegation of future injury will be sufficient only if 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'"  *Dorce*, 2 F.4th at 95 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).  Further "plaintiffs cannot rely solely on past injuries" to have standing to pursue such remedies, but must establish how they will be injured prospectively."  *Id.* (internal quotation marks and brackets omitted); *see id.* at 96 ("'Past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy' with respect to potential future similar wrongs. . . .  [T]he remedy for continuing pain and suffering from a defendant's past damage is compensatory damages, as an injunction against future actions by a defendant does not remedy the harm done by that defendant's past acts." (brackets omitted) (quoting *Lyons*, 461 U.S. at 103)).  And when a plaintiff challenges an official policy, "the existence of an official policy, on its own, is not sufficient to confer standing to sue for injunctive and declaratory relief on any individual who had previously been subjected to that policy unless the individual can also show a sufficient likelihood of future harm."  *Id.* at 95 (internal quotation marks and brackets omitted).

The Fund bears the burden of demonstrating that it has standing and that the Court has subject matter jurisdiction. *Aurecchione*, 426 F.3d at 638 ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."). But the Fund has failed to demonstrate any likelihood of future harm. In fact, its allegations suggest otherwise: the Fund acknowledges that it no longer is posting bail for its clients. The Fund alleges that "it remains poised to *resume* posting bails *should the need arise*," that it "currently has dozens of bails outstanding," and that its "current operations are primarily focused on ensuring clients out on bail return to court and collecting outstanding bails." Am. Compl. ¶ 8 (emphasis added). This allegation that the Fund remains ready to *resume* posting bails reflects that it has ceased doing so. Indeed, each of the examples offered by the Fund in the Amended Complaint involves a situation where bail was posted prior to 2020, with forfeiture occurring within *two months* of the bail being posted. *Id.* ¶¶ 57-77. These allegations demonstrate that the Fund does not currently post new bails for clients.[4]

Nor has the Fund provided any information on the cases for which it already has posted bail. It pleads no facts about the stages of those proceedings, the likelihood of those clients missing court dates and therefore being potentially subject to any forfeiture, or where those cases are pending (presumably, Bronx Criminal Court, but that is not even alleged). Without such information, or other information that might reflect a likelihood of future injury, the Fund has not established that the risk of one of its remaining bails being forfeited is "certainly impending" or

---

[4] The Court additionally notes that the Fund's website indicates that it has ceased posting bail and has not been doing so for over three years: "On January 1, 2020, after more than a decade, The Bronx Freedom Fund stopped posting bails in light of long overdue reforms that ended cash bail for the majority of cases where charitable bail funds can provide assistance under state law. From the bottom of our hearts, we thank the thousands of people who powered the Freedom Fund over the years. Read more about our closure here." www.thebronxfreedomfund.org (last visited Mar. 30, 2023).

otherwise that there is a "substantial risk that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (internal quotation marks omitted).

In short, for the unknown number of cases for which the Fund has outstanding bail obligations, the issue is this:  to find standing, the Court would need to assess the likelihood that (1) a defendant associated with that bail remains in criminal proceedings in the Bronx; (2) that defendant misses a court date and has a bench warrant issued for his arrest; (3) on the basis of that bench warrant alone (*i.e.*, without a judicial order of forfeiture), the Bronx County Criminal Court forfeits the defendant's bail without a court order; and (4) the DOF refuses to return such forfeited bail.[5]  Having not alleged or otherwise presented the Court with any information that would aid in this assessment, the Fund has failed to establish by a preponderance of the evidence that it stands at a sufficient risk of future harm as to have standing to bring its claims for injunctive and declaratory relief.  *See Katz v. Donna Karan Co.*, 872 F.3d 114, 120 (2d Cir. 2017); *see also Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004) ("Under *Lyons*, to establish a sufficient likelihood of a future unconstitutional strip search, Shain would have to show that *if* he is arrested in Nassau County and *if* the arrest is for a misdemeanor and *if* he is not released on bail and *if* he is remanded to NCCC and *if* there is no particularized reasonable suspicion that he is concealing contraband, he will again be strip searched.  Such an accumulation of inferences is simply too speculative and conjectural to supply a predicate for prospective injunctive relief." (emphasis in original)).

Plaintiff seeks only injunctive and declaratory relief against Barry, Kalish, and the John and Jane Doe Defendants.  *See* Am. Compl. at 20; Opposition to Barry/Kalish Motion at 2 ("[T]he Amended Complaint seeks only declaratory and injunctive relief against the individual

---

[5] Of course, the inferential chain only lengthens for any future bails posted by the Fund, as the Court would also have to assess the likelihood that the Fund decides to change its current practices and resume posting bail.

defendants—Kalish and Barry.").  Accordingly, the Amended Complaint is dismissed as to Barry, Kalish, and the John and Jane Doe Defendants.  The Fund does assert claims that seek non-prospective relief from the City, in the form of compensatory damages, so the Court turns to the question of the Fund's standing to bring those claims.

### 2.   Past Damages

Unlike its claims against Barry and Kalish, the Fund does not bring only forward-looking claims against the City; the Fund also seeks compensatory damages from the City in the form of the return of allegedly unlawfully forfeited cash bails.  Am. Compl. at 20.  The City maintains that standing is lacking for these claims as well.  The City argues that the Fund's injury is not fairly traceable to its conduct, because "any bail monies improperly forfeited without a judicial determination allegedly stemmed from the conduct of Kalish and the Bronx County Clerk's Office. DOF or the City plays no role in determining whether bail monies be forfeited but merely undertakes a ministerial role when it receives the Bail Forfeiture Orders."  City Motion at 12 (citation omitted).  The Fund responds that it has alleged that the DOF, with knowledge that a bail forfeiture is invalid, issues notices regarding forfeitures and makes the "affirmative choice to send that money to the Comptroller for the City of New York" in effect "choos[ing] to accept rather than remit money it knows to have been unlawfully seized," and that the Comptroller then makes "indisputably non-ministerial decisions regarding whether and where to invest the forfeited money."  Opposition to City Motion at 11-12.

"To satisfy the 'traceability' or 'causation' prong of the Article III standing test, allegations must provide more than 'unadorned speculation' to 'connect their injury to the challenged actions.'"  *Citizens for Responsibility & Ethics v. Trump*, 953 F.3d 178, 191 (2d Cir. 2019) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44-45 (1976)), *vacated as moot*, 141 S. Ct. 1262

(Mem) (2021).   The allegations "must plausibly support a 'substantial likelihood' that the plaintiff's injury was the consequence of the defendant's allegedly unlawful actions (and that prospective relief could mitigate the harm)."  *Id.*  (quoting *Simon*, 426 U.S. at 45).  At the pleading stage, "the plaintiffs' 'burden. . . of alleging that their injury is "fairly traceable" to' the challenged act 'is relatively modest.'"  *Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013) (ellipsis in original) (quoting *Bennett v. Spear*, 520 U.S. 154, 171 (1997)).  The required causal nexus is "most easily shown if there is a direct relationship between the plaintiff and the defendant with respect to the conduct at issue."  *Id.* at 91.

The Fund's allegations that the City has refused to return illegally retained bail funds is sufficient to satisfy the traceability requirement.  As alleged, the DOF, alleged to be "a department of the City," Am. Compl. ¶ 10, "refuses to return the cash bail" after "being notified that the bail has been deemed forfeited" and instead "remits the bail to the Comptroller for the City of New York, who then invests the money on behalf of the City," *id.* ¶¶ 53-54.  The causal connection between this activity and the injury allegedly suffered by the Fund, by not being returned the posted funds, is clear:  had the DOF returned the allegedly unlawfully forfeited cash bail to the Fund, the Fund would not have been injured.  This connection is sufficient to satisfy the traceability requirement.  *See Rothstein*, 708 F.3d at 92 (noting that "at the pleading stage, the 'fairly traceable' standard is not equivalent to a requirement of tort causation" (quotation marks omitted)).

The City also argues that the availability of post-deprivation procedures, which it claims the Fund has not availed itself of, renders the Fund's injury self-inflicted and also bars standing. City Motion at 12.  Because "exhaustion of state judicial remedies is not a prerequisite to adjudication of [Section] 1983 claims in federal court," *Swan v. Stoneman*, 635 F.2d 97, 102 (2d Cir. 1980), the Court rejects this argument.

15

The Court therefore determines that the Fund has standing to bring its claims for compensatory damages against the City.

## C.    CPLR Section 2608

The City next argues that, as a matter of law, the DOF "[c]annot be liable for complying with the direction of an order of the court pursuant to CPLR 2607 and 2608." City Motion at 10 (emphasis omitted). New York Civil Practice Law and Rules ("CPLR") section 2607 provides in part that "[n]o property paid into court, or income from such property, shall be paid out except upon order of the court directing payment to a specified person." The City argues that the DOF acts only in accordance with this provision. *Id.* at 10. This matters, says the City, because CPLR section 2608 provides that "[n]o liability shall attach to a custodian of property paid into court because of a payment made by him in good faith in accordance with the direction of an order of the court or as provided by rule 2607." *Id.* (quoting CPLR § 2608)

The parties disagree on several points here. One is whether CPLR 2608 even applies in bail matters which, if not criminal proceedings themselves certainly relate to criminal proceedings and so would perhaps not be governed by the *Civil* Practice Law and Rules. *See* Opposition to City Motion at 12. Another is whether the rule should apply, given the Fund's core argument that the Department is not acting "[i]n accordance with the direction of an order of the court," CPLR § 2608. *See* Opposition to City Motion at 13.

But the City's argument fails for a more fundamental reason. The Fund's claim under 42 U.S.C. § 1983 is one under federal law and cannot be barred by such a state provision. *See* U.S. Const. Art. VI, para 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound

thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.");
*Howlett v. Rose*, 496 U.S. 356, 357 (1990) ("Conduct by persons acting under color of state law
which is wrongful under § 1983 cannot be immunized by state law . . . ."); *Martinez v. California*,
444 U.S. 277, 284, n.8 (1980) ("A construction of the federal statute which permitted a state
immunity defense to have controlling effect would transmute a basic guarantee into an illusory
promise; and the supremacy clause of the Constitution insures that the proper construction may be
enforced." (quoting *Hampton v. Chicago*, 484 F.2d 602, 607 (7th Cir. 1973))).

**D.    Section 1983**

Having found that the Fund has pleaded standing for its claims against the City for past
injuries, the Court turns to the merits of its section 1983 claim against the City.   In *Monell v.
Department of Social Services of the City of New York*, the Supreme Court recognized that a
municipality can be held liable under section 1983 only when "the action that is alleged to be
unconstitutional implements or executes a policy statement, ordinance, regulation, or decision
officially adopted or promulgated by" that body's officers.  436 U.S. 658, 690 (1978); *see Taylor
v. City of New York*, No. 19 Civ. 6754 (KPF), 2022 WL 744037, at *24 (S.D.N.Y. Mar. 11, 2022)
(recognizing that a municipality cannot be made liable under section 1983 under the doctrine of
*respondeat superior*, but rather the plaintiff must "demonstrate that, through its deliberate conduct,
the municipality was the moving force behind the alleged injury" (internal quotation marks
omitted)).  Put simply, "a municipality can be held liable under Section 1983 if the deprivation of
the plaintiff's rights under federal law is *caused by* a governmental custom, policy, or usage of the
municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (emphasis added); *see
Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether
made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury that the government as an entity is responsible under § 1983."). "[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 386 (1989) (citing *Monell*, 436 U.S. 658).[6]

"To hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (alteration in original and citation omitted). To establish the existence of a municipal policy or custom, a plaintiff may demonstrate that his or her constitutional injuries arose from:

> (1) the existence of a formal policy officially endorsed by the municipality;
> (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights;
> (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or
> (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with the municipal employees.

*Schroeder v. Cnty. of Nassau*, 158 F. Supp. 3d 123, 130 (E.D.N.Y. 2016) (citation omitted). A plaintiff must "also demonstrate that, through its *deliberate* conduct, the municipality was the

---

[6] The City argues that "there are meaningful post-deprivation remedies available under state law." City Motion at 13. But the City's liability under section 1983 could only exist under *Monell*. The question of whether meaningful post-deprivation remedies exist arises in the context of a section 1983 claim against a state for a due process violation. *See, e.g.*, *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). ("In the [situation of a claim based on random, unauthorized acts by state employees], the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy."). Moreover, while perhaps a section 1983 claim could be brought against individual City employees, all claims against individual Defendants in this case were brought for prospective relief for which, the Court has concluded, the Fund lacks standing. *See supra* III.B.1.

'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (citation omitted).

In opposing dismissal, the Fund argues that it has alleged a "consistent and widespread practice of which the supervising policymakers must have been aware."  Opposition to City Motion at 22.  It insists:

> [T]he [Amended Complaint] alleges that the DOF is aware that a forfeiture is invalid unless ordered by a judge, that the DOF issues notices to depositors/suretors regarding forfeitures, and that when the DOF receives bail money forfeited by someone other than a judge, the DOF nevertheless makes the affirmative choice to send that money to the Comptroller for the City of New York, who then decides where and how to invest the money on behalf of the City.

*Id.* at 23.

The actual allegations in the Amended Complaint, however, do not go as far as the Fund suggests in its opposition brief.  In fact, the allegations related to the City and DOF are few.  The Bronx Court Clerk's Office, an entity of the New York State Unified Court System,[7] "sends the money to the New York City Department of Finance" which "after being notified that the bail has been deemed forfeited without a court order, . . . issues a notice informing the suretor/depositor that the money is deemed forfeited" and that notice "gives no indication that the court did not order

---

[7] The parties agree that Barry and Kalish are employees of state entities.  *See* City Motion at 21 (stating that the court is a state agency and "[t]he City and DOF simply have no control over the affairs and functions of the state courts or court personnel, and are not involved in issuing court instructions, determinations, or orders to refund, remit or forfeit cash bail monies"); Opposition to City Motion at 15 (failing to respond to the City's argument and stating that "[t]he City Defendants' actions were necessary to this unlawful scheme" before discussing only the actions of the DOF and the Comptroller for New York City); Opposition to Barry/Kalish Motion at 1 (defining Barry and Kalish as the "State Defendants").  The Court therefore does not consider their conduct in assessing whether the Fund has established a municipal policy on the part of the *City*.

forfeiture." Am. Compl. ¶ 53.  The DOF "refuses to return the cash bail, and instead systematically remits the bail to the Comptroller for the City of New York, who then invests the money on behalf of the City."  *Id.* ¶ 54.  The specific examples cited in the Amended Complaint do not contain many additional allegations, only that the Fund "received official notice [of the forfeiture] from the New York City Department of Finance."  Am. Compl. ¶ 62; *see also id.* ¶¶ 67, 72, 77.

     These allegations fail to plausibly establish a municipal policy or custom because they do not plausibly establish any conduct on the part of the City itself, as opposed to its employees.  Essentially, the Amended Complaint contains two types of allegations against the City.  The first are general allegations as to what the Fund claims are the general practices of the City with respect to bail.  *Id.* ¶¶ 53-55.  These allegations are supposedly demonstrated by the specific examples presented by the Fund, which make up the second set of allegations.  *Id.* ¶ 53 ("As discussed below, after being notified that the bail has been deemed forfeited without a court order . . . .").  But the specific examples say nothing about the DOF's understanding of anything about the status of any particular bail.  The Fund made "an inquiry" to some undisclosed entity about why bail is not returned, *id.* ¶ 61; *see also id.* ¶¶ 67, 72, 77, received a form filled out by the Bronx County Court, *see* Dkt. 1-2, and then received an "official notice" from the DOF, Am. Compl. ¶¶ 62, 67, 72, 77.  None of these allegations reflect that the DOF was notified as to the nature of the bail funds.  Indeed, the only thing that the Fund explicitly alleges is sent to the DOF is "the money."  *Id.* ¶ 53.

     The Fund might point as well to Operational Directive 2013-11, which states that "[s]hould the defendant fail to comply with his/her bail conditions and the Court orders forfeiture, the clerk will complete a CRC 131A-Forfeiture form," and then "transmit CRC 131A to the NYC [DOF]."  *Id.* ¶ 45.  But the Fund alleges that "the Bronx Criminal Court clerks have been properly filing CRC 131A forms" *id.* ¶ 46, and a review of the CRC 131A forms submitted to the Court, *see e.g.*,

Dkt. 1-2, does not reveal any field of information from which the DOF might be able to determine the procedure that led to the forfeiture for any specific bail, or otherwise indicate that the DOF has any knowledge of how a particular bail is forfeited and whether it was pursuant to a specific court order.

These allegations show, at most, that on four occasions a DOF employee sent an "official notice" to the Fund that its bail had been forfeited in situations where the Fund alleges that forfeiture was unlawful. Far from pleading the existence of a municipal policy, these allegations do not even say anything about the information before the DOF in these four cases as to whether the bail was properly forfeited. Nor do they reveal anything about DOF's practices for sending out such forfeiture notifications, for processing forfeited funds, or otherwise for examining the circumstances of bail money they receive. These allegations do not plausibly show "that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404. Therefore, the Fund has not adequately alleged a policy or custom of the City that can subject it to *Monell* liability.

## E.     The Declaratory Judgment Act Claims

Having dismissed the Fund's federal claim under section 1983, the only remaining federal claim arises under the Declaratory Judgment Act at 28 U.S.C. §§ 2201 and 2202. Am. Compl. ¶¶ 93-94. But the Declaratory Judgment Act does not provide an independent basis for federal jurisdiction, and, as discussed *infra* at III.F, the Court declines to exercise supplemental jurisdiction. *See Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996) ("Section 2201 provides no independent basis for subject matter jurisdiction."). The Court therefore dismisses the Fund's claim under the Declaratory Judgment

Act.  *See, e.g.*, *Eisenbach v. Vill. of Nelsonville*, No. 20 Civ. 8566 (VB), 2021 WL 5054119, at *7 (S.D.N.Y. Nov. 1, 2021).

## F.      State Law Claims

Federal courts should avoid "[n]eedless decisions of state law . . . both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  For that reason, the Supreme Court has emphasized that a district court's discretion to exercise supplemental jurisdiction over related state-law claims "need not be exercised in every case in which it is found to exist."  *Id.*  In particular, if "federal claims are dismissed before trial . . . the state claims should be dismissed as well."  *Id.*  To be sure, "this statement does not establish a mandatory rule to be applied inflexibly in all cases."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (citation omitted).  Rather, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."  *Id.* at 350.  But "in the usual case in which all federal-law claims are eliminated before trial," those factors "will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Id.* at 350 n.7.  In such cases, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  *Id.* at 350 (footnote and citation omitted).  The Fund has presented no argument as to why the Court should retain its state law claims if its federal claims were dismissed.  Opposition to City Motion at 24-25.  Therefore, the Court declines to exercise supplemental jurisdiction and, having dismissed the Funds' federal claims as to the City, dismisses its state claims without prejudice as well.

**G.      Leave to Amend**

Lastly, the Court considers whether to grant leave to amend.  Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, a court "should freely give leave when justice so requires."  The Fund has not asked the Court for leave to amend the Amended Complaint.  "But even when a party does not ask for leave to amend, the Court may grant leave to amend *sua sponte*."  *In re Garrett Motion Inc. Sec. Litig.*, No. 20 Civ. 7992 (JPC), 2022 WL 976269, at *18 (S.D.N.Y. Mar. 31, 2022) (internal quotation marks omitted) (collecting cases).  When deciding whether to grant *sua sponte* leave to amend, "courts will consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility."  *Morales v. Kimberly-Clark Corp.*, No. 18 Civ. 7401 (NSR), 2020 WL 2766050, at *9 (S.D.N.Y. May 27, 2020).  After considering these factors, the Court will grant the Fund leave to amend the Amended Complaint in the event it believes it can remedy the pleading deficiencies identified herein.  Despite the fact that the Fund has already amended its original complaint when faced with a motion to dismiss, nothing indicates that the amendment was done in bad faith and it may be possible that the Fund could remedy the deficiencies the Court has identified.  The Court emphasizes, however, that the Fund should amend only if it is able to resolve the pleading deficiencies outlined in this Opinion and Order.  However, because amendment with respect to the DOF would be futile, the Court denies leave to amend with respect to claims against that Defendant.

## IV.  Conclusion

For the previously stated reasons, the Court dismisses the Amended Complaint in its entirety.  If the Fund wishes to amend its Amended Complaint, then it must do so within 30 days of this Opinion and Order.  If the Fund fails to amend, then the Court will dismiss its claims against

Barry, Kalish, and the John and Jane Doe Defendants, as well as any state law claims against the City, without prejudice.  The Court will also dismiss the claims against the DOF and section 1983 claims against the City with prejudice.  The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 56, 59, and 61.

　　　　　SO ORDERED.

Dated: March 31, 2023
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　JOHN P. CRONAN
　　　　　　　　　　　　　　　　　　　　United States District Judge